## BIGELOW *vs.* ROMMELT and others.

An oral agreement by the complainant, in a foreclosure suit, that if an injunction, restraining him from proceeding in his suit, be dissolved, he would stay all proceedings on the decree he should obtain in his suit for two years, to enable the mortgagors to raise the money to pay off his decree, is admissible on an application for an order staying the complainant from proceeding to sale, under the execution issued in his suit, until the expiration of the time agreed upon. But the proof of the agreement must be clear.

On petition of Rommelt and Leucht, and proofs. The object of the petition is to obtain an order staying the complainant, until July 3d, 1874, from proceeding to sale, under an execution issued out of this court for the sale of mortgaged premises.

*Mr. Dixon,* for petitioners.

*Mr. C. Parker,* for complainant.

THE CHANCELLOR.

It appears that, in March, 1872, the petitioners were adjudged bankrupts in the District Court of the United States for the District of New Jersey; that the complainant was one of their creditors; that in April, 1872, he

filed his bill in this court for the foreclosure and sale of certain mortgaged premises—a brewery in Jersey City— under a mortgage given to him by the petitioners before their bankruptcy; that an injunction was, on the 13th day of April, 1872, issued out of the District Court, restraining him from proceeding in his suit on the mortgage, and that, subsequently, some time in the following June, an arrangement was made by the trustees appointed under the proceedings in bankruptcy, for the settlement of the claims of the creditors of the bankrupts. Part of the plan was the restoration to the bankrupts of their property, and the giving by them of a mortgage for $200,000 to the trustees, for the security of the creditors. The injunction was still in force. The complainant was the creditor of the bankrupts for about $80,000, over and above his mortgage debt of about $50,000. The complainant's consent was necessary to effectuate the contemplated arrangement. This he refused to give, except on terms that the injunction should be dissolved. The trustees agreed to this, and their solicitor gave him a consent, in writing, accordingly, and he signed the agreement of settlement. This consent was dated June 29th, 1872. The injunction was dissolved July 3d, 1872. The complainant being released from the injunction, proceeded in his suit, in this court, to final decree, and in November, 1872, issued execution thereon, under which the mortgaged premises have been advertised for sale by the sheriff of Hudson county, and the sale adjourned from time to time. In August, 1873, the petition was filed. Under it, testimony has been taken by the parties.

The petitioners allege, that the consent to the dissolution of the injunction was given on the express stipulation, on the part of the complainant, that he would stay all proceedings on the decree he should obtain in the foreclosure suit for two years from that time, to enable the petitioners to raise the money to pay off his decree. He denies this in toto.

The complainant is entitled to the benefit of his decree and execution, according to their terms, unless he has

debarred himself from it by the alleged stipulation. The petitioners rely, for proof of the stipulation, entirely upon the recollection of witnesses. It was not in writing. While there is no rule of this court, excluding from its consideration, in such cases, agreements not in writing, the court will require clear proof of the unwritten stipulation on which the defendant relies, before it will deprive the complainant of the advantage to which he would otherwise, by law, be entitled, or restrain him from enforcing his remedy according to law and the practice of the court.

The case made by the petition is, that the complainant refused to sign the agreement, except on condition of dissolution of the injunction, and that his terms were acceded to, on and in consideration of his stipulation, that he would not undertake to enforce his decree in two years from that time. The reason given for exacting this stipulation was, according to the testimony of the attorney of the trustees, that if he was allowed to take a decree and sell the property, it would compel the trustees to raise the amount of the mortgage, in order to protect the other creditors. It is difficult to understand why a stipulation of so much importance was not included in the written consent to a dissolution of the injunction, or if that method, for any reason, was deemed undesirable, why it was not reduced to writing, and the signature of the complainant, or of his solicitor or counsel, required thereto, in order that no question might, thereafter, successfully be raised as to its existence, character, or purport. It is also difficult to understand why, if such agreement, in fact, existed, and had been so strenuously and rigorously insisted on as a *sine qua non* to the consent to the dissolution, the petitioners should not have had recourse to this court at an earlier day, to prevent the complainant from so flagrantly violating his pledged faith. It is alleged that he issued execution in November, 1872; the petitioners first complain of it to this court in August, 1873.

The attorney's statement is to the effect, that the condition by which the stipulation was required, was made by him at

the meeting of the trustees, in Bernheimer's office, in the summer of 1872, in June or July. The date of the consent (June 29th, 1872,) which was signed subsequently, shows that that meeting was in June. He is not positive as to the terms of this important stipulation. He says, he understood the complainant to say he was willing to wait two years before he enforced his decree. On being inquired of by cross-examination, as to the certainty of his recollection as to the complainant's having said he was willing to wait two years for his money, he says: " That is my impression. I may be mistaken about it, but I think not;" and he then proceeds to give his reason, which was his advice to the trustees, not to consent to dissolve the injunction, since they might be compelled to raise the $50,000 of the mortgage at once; and he adds: ",When the complainant made his proposition, they agreed to it, remarking that it would give the petitioners time to settle his claim, or words to that effect." He further says, he is sure some month of June was spoken of as the expiration of the limit.

His recollection of the transaction is, therefore, that at the meeting of the trustees, in Bernheimer's office, in June, the stipulation arose from an objection made by him. This, however, is not the statement made by Rommelt, one of the petitioners. His version of the matter is, that the complainant desired him to sign some document, (he supposes it was one acknowledging the complainant's mortgage to be good,) in consideration whereof the latter was willing to give him time. That at the suggestion of Bernheimer, to whom he spoke on the subject several times, he went to complainant, and asked for five years, and finally, the latter agreed to give him two. This, he says, was in July, 1872. He states, speaking of his various conversations with the complainant, that " the time in all these interviews ended in July, 1874." The attorney, it will be remembered, is certain that some June was the limit. Mr. Rommelt is not sure at what place the conversation with complainant took place; whether at the office of complainant or at that of Bernheimer. He thought it was

very likely at the former place, but it might have been at the latter. It is clear, that the agreement which this witness testifies to, was not the one of which the attorney speaks, but one which he says was made by complainant with him after conversation and negotiation with the complainant on the subject, at the instance of Bernheimer.

Mr. Bernheimer testifies to a conversation, which he says took place at his office, between the attorney, Rommelt and himself, at which he says the complainant was present and might have heard it; in which he was told they had arranged with the complainant to let him get a decree, as he had promised, after the trustees had consented to let him get the decree, to wait a given time, which was, according to his recollection, less than three years, and more than one year. He thinks they compromised on two years, but he is not certain. He says he told Rommelt to try and get of complainant three years, and, if he could, five years, to enable Rommelt to pay off his indebtedness; that Rommelt told him the complainant had refused to give him three years, but had compromised between those terms, and he therefore believes it was not less than two years. A compromise between the two terms of three and five years, would not, it may be remarked, be two years, but four. Neither the attorney nor Rommelt testifies to this conversation, and the complainant wholly denies it.

The complainant denies having made any such stipulation as is insisted on, or any stipulation whatever. He says that his signature to the agreement of settlement, was the sole consideration of the agreement to dissolve the injunction.

He testifies that he stated before the trustees, his willingness to give the petitioners time until July, 1873, to pay the mortgage debt, provided they would pay off the other debt of $50,000, which was secured by collaterals only, before the 1st of January, 1873. It is not altogether improbable that the misunderstanding may have arisen from this conversation.

From the testimony of the attorney of the trustees, it appears that the injunction was issued, shortly after service of the subpœna to answer was served in this cause. No answer

was put in, nor does it appear that any defence was apprehended by the complainant or his solicitor.

It is not necessary to pursue the consideration of the testimony, further. It is enough to say that the proof of an agreement for time is not satisfactory to my mind. If the stipulation was in fact made, and the defendants are prejudiced by failing to obtain the relief sought by their petition, that failure is to be attributed to their omission to take the means, which prudence and business foresight dictated, to obtain and preserve the evidence of the stipulation.

The prayer of the petition is denied, and the petition dismissed.